ACHSA E. ORTLEY v. SAMUEL L. CHADWICK.

1. A paper may be competent evidence of a fact stated in it, although invalid as an agreement to bind the party.
2. The statements of an agreement invalid for want of consideration may be competent, and may be proved by the paper.

In ejectment. Case certified from Ocean Circuit Court.

For the plaintiff, *J. D. Bedle.*

For the defendant, *A. C. McLean.*

CHIEF JUSTICE. This was an action of ejectment for 27.45 acres of land, which was once the bed of Cranberry inlet, in the county of Monmouth.

The plaintiff claimed the land under a patent from the board of proprietors to Thomas Gordon, dated April 1st, 1703, which it was insisted covered the premises in dispute.

The defendant claimed that, when the Gordon patent was issued, Cranberry inlet covered the premises in dispute; that it being land in the bed of this arm of the sea, it was not within the patent, and did not pass by its terms.

The description in the patent was as follows: also another tract on Barnegat beach, beginning at Margaret Winder's land, which is forty chains below the mouth of Vale creek, and running southwest along the beach to the new inlet in length, and from the sea to the beach.

The defendant's title was founded upon a survey and return of the lands, made in 1837, to Edward Brinley, who conveyed it to defendant.

The principal controversy at the trial was, whether this land was covered with water at the date of the Gordon patent.

The evidence on the part of the plaintiff tended to show that the inlet broke through after the Gordon patent was issued, remained open until 1816, and then closed. The de-

fendant's evidence, that it was open in April, 1703, the date of the patent. The real question in the cause was, whether the new inlet mentioned in the Gordon patent was below Cranberry inlet, or was Cranberry inlet.

The plaintiff insisted it was below it, and not it, and endeavored to prove it.

On his principal case the plaintiff offered in evidence, not as a part of his title, for he did not claim under it, a deed from Andrew Bell and F. W. Brinley to Michael L. Ortley, dated August 22d, 1857, to fix the beginning corner of the defendant's survey. This was a deed for 123.40 acres.

After the defendant had given his documentary evidence, he was sworn, and stated, that Ortley told him, shortly after he took up this land, that the reason he did not take it all up across the beach was because it was too sandy; he did not want to pay tax for it.

. This testimony was offered in relation to this 123 acre tract, conveyed by Bell and Brinley to Ortley in 1857, to show that Ortley admitted that the land was then vacant, and gave as a reason for not taking it up, not that it was a part of the old beach covered by the Gordon patent, but that it was too sandy. In order to parry the force of this evidence, the plaintiff, on his rebutting case, endeavored to show that such was not the reason why it was not included in the 123 acre survey, but that the true reason was that the surveyor who made the survey, under an agreement between Bell and Brinley and Ortley, did not then think it new land, but a part of the old· Gordon patent. The plaintiff here offered in evidence an agreement between Andrew Bell and Francis W. Brinley, a committee of the board of proprietors, and Ortley, by which they agreed to convey to Ortley all the vacant meadow and sedge islands now lying opposite to and adjoining the part of the beach now owned by Ortley in Barnegat bay, in the county of Monmouth, the survey thereof to be made by Ananias Gifford.

To the reception of this paper in evidence, the defendant made two objections.

1st. That it was not the best evidence; that the minutes of the board should have been offered to show the authority of Bell and Brinley to make it.

2d. That it was not rebutting evidence.

The judge admitted it, suspended judgment on the verdict, and certified to this court the following question for its advisory opinion, whether the agreement was legal evidence at all, and when offered. The only objection made to the authenticity of the agreement was not that it was not proved by the subscribing witness, but that the minutes of the board should have been produced to show the authority of Bell and Brinley. Judge Gifford, who was named in it, said he was present with Ortley before the board when the agreement was made; that it was signed before the board, and in their presence. He also testified that he made the survey in conformity to the agreement, and did not include the tract in dispute, because it was not vacant land, but included in the Gordon patent.

The Bell and Brinley deed, offered in evidence before this by both parties, showed that this agreement had been carried into effect by both parties, and the land included in it conveyed to Ortley, on the 22d August, 1857, by Bell and Brinley, to whom it was returned.

It was entirely immaterial whether the agreement was binding upon the board or not. It was not offered as evidence of title, but of intention to show that Ortley intended to buy and have surveyed *all* the vacant land, and not a part of it, to rebut the evidence of Chadwick, that he did not have the whole vacant land surveyed, because it was too sandy. The argument from the agreement was, that Ortley could not have said so, because he had bargained for the whole, had expressed his intention to have the whole, and bound himself to take the whole, and that, in consequence, Gifford surveyed the whole. Taken in connection with the deed of Bell and Brinley, which was in execution of it, it showed that they intended to sell the whole vacant land, which the declaration of Ortley tended to disprove.

Ortley v. Chadwick.

The fact of its execution by them, as a committee of the board, not being denied, and it having been carried into execution by a subsequent return and conveyance, and Gifford having made the survey, as he swears, to carry it into execution, it was competent without any proof to show that it was binding on the board when made.

A paper may be competent evidence of a fact stated in it,. although invalid as an agreement to bind the party.

The statements of an agreement, invalid for want of a consideration, may be competent, and may be proved by the paper.

The statement of Ortley was, that he did not buy all the vacant land. His previous acts, thus proved, showed he did.

The paper was a component part of Ortley's act of purchase. It was competent for him to show that he did buy all the vacant land, had it surveyed and conveyed to him.

Gifford testified he surveyed all the vacant land, to carry into effect that paper. It was competent, whether valid as an agreement or not, to explain and corroborate the evidence of Gifford.

The paper was legal evidence in the cause, and was properly admitted as rebutting evidence. It legally tended to destroy the effect of the plaintiff's admission, by showing either that it was never made, or, if made, that it was not intended as an admission that the land was vacant.

ELMER, J. The question certified to this court for its advisory opinion is, whether a certain agreement, signed by Andrew Bell and Francis W. Brinley, dated May 16th, 1837, " was legal evidence at all, and when offered." Instead of explicitly stating under what circumstances and for what purpose the paper was offered, as it is very desirable such cases should do, this case leaves us to infer this from a mass of testimony and a mere reference to documents, most of which have no relation to the point submitted. It appears that the plaintiff claimed title to a tract of land on the sea shore, in the possession of the defendant, under a survey

made in 1703, called the Gordon survey. The defendant claimed the premises by virtue of a survey of twenty-seven acres, recorded in 1859, for Edward Brinley. The title of the respective parties turned on the question, whether the boundaries of the Gordon survey included the land surveyed to Brinley. It is described very vaguely as "beginning at Margaret Winder's land, which is forty chains below the mouth of Vale creek, and running southwest along the beach and the new inlet in length, from the sea to the beach in breadth." The main point of dispute seems to have been the situation, at that time, of the "new inlet." After the plaintiff had put in evidence sundry documents and much verbal testimony tending to show the change of the inlet and other circumstances, and had rested his case, the defendant produced evidence tending to show that what has in modern times been called Cranberry inlet, was there at the date of the Gordon survey. He also gave in evidence a survey to Bell and Brinley, dated in 1837, for 123 acres, which he insisted tended to show this, and otherwise to aid in fixing the true location of the Gordon survey; and for the same objects the defendant himself testified that Michael Ortley, under whom the plaintiff claimed, told him, a little while after he took up the 123 acres, that the reason he did not take it all up across the beach was because it was too sandy; he did not want to pay tax for it. By taking it up across the beach he would have taken up the disputed land, or some part of it, and the inference from this declaration was, or might be, that he did not claim it under the Gordon title. After the defendant had rested, the plaintiff produced the agreement in question, which had been previously stated by a witness to be the same by virtue of which the survey of 123 acres was made.

It was urged, for the defendant, that this agreement was inadmissible, because the minutes of the council, whereby Bell and Brinley were authorized to act as its committee, was the only competent evidence of its proceedings; and it was also insisted that the agreement, if admissible at all, should have been produced as original evidence of the

plaintiff's title before he rested his case. These objections seem to rest on the assumption that the agreement which was signed by Bell was offered. to show that, at the date thereof, the proprietors supposed and admitted that the ·Gordon survey covered the land now in dispute. I find nothing in the case to show for what purpose it was offered; but if it be taken for granted that this was the object, I do ·not perceive that the minute of the council was of any importance. ·The council of proprietors is not the owner of the land, and conveyed no title to it. Its duty is to·examine the title of individual claimants to undivided rights, and if found to be regular, to authorize and approve setting off to them in severalty, by proper surveys, their due quantity of acres out of any land not before appropriated and set off to some other proprietor. If the acts or admissions of Bell and Brinley, or of any other proprietors, were competent ·evidence, as against the defendant, to show that before the making of his survey they believed the land was included within a prior survey, which it is not necessary to decide, it was, as the acts and admissions of individual proprietors, made in opposition to their interest, which were as properly proved by the agreement itself as by the most formal act of the council.

But there is another purpose for which, it appears by the ·case, this paper might have been properly offered when it was received, and for which purpose we must presume it was offered, and that was to explain and rebut the evidence produced by the defendant. It was a document connected with the survey of 123 acres produced by him, and by virtue of which there was evidence that survey was made. It was therefore of itself, and whether authorized in fact by the ·council or not, competent to explain the circumstances under which that survey was made. It was also competent to go to the jury, as tending to show that the defendant may have mistaken or misrepresented what Ortley said about it. What effect it was entitled to have was a question for the court and jury, which we must presume they decided cor-

rectly. I am therefore of opinion that it be certified to the Circuit Court that the agreement was legal evidence when it was offered.